The document below is hereby signed.

Signed: May 11, 2021



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STUART MILLS DAVENPORT, | ) | Case No. 15-00540 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STUART MILLS DAVENPORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 18-10003 |
| BABAK DJOURABCHI and MONICA | ) | |
| WELT, | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |
| Defendants. | ) | |

MEMORANDUM DECISION FIXING THE EXTENT OF THE
PLAINTIFF'S REIMBURSEMENT OBLIGATION FOR ATTORNEYS'
FEES INCURRED BY THE DEFENDANTS AFTER FEBRUARY 13, 2018

The remaining issue in this adversary proceeding is the

amount of the reimbursement obligation owed by the plaintiff,

Davenport, to the defendants, Djourabchi and Welt, for attorneys'

fees for work performed after February 13, 2018, and through January 7, 2021, for litigation in the main bankruptcy case and in this adversary proceeding.[1]  Djourabchi and Welt's Exhibits A and B list fees sought for work through January 7, 2021, of $45,901.00 when duplicated time entries are disregarded. (Exhibit B was limited to fees incurred in the adversary proceeding whereas Exhibit A includes time records for both the main case and the adversary proceeding, thus resulting in some duplicated entries.)  For the reasons that follow, of the $45,901.00, the non-duplicated fees on Exhibits A and B for which reimbursement is allowed total $29,093.08 and the fees for which reimbursement is disallowed total $16,807.92:

|             | Allow       | Disallow    | Total       |
|-------------|-------------|-------------|-------------|
| Exhibit B:  | $10,627.50  | $130.00     | $10,757.50  |
| Exhibit A:  | $18,465.58  | $16,677.92  | $35,143.50  |
| **Totals:** | $29,093.08  | $16,807.92  | $45,901.00  |

With respect to fees incurred after January 7, 2021, and through the trial of April 9, 2021 (fees not appearing on Exhibit A or Exhibit B) $2,500.00 is the amount of reimbursable fees owed by

---

[1]  I have abstained from addressing fees incurred in the civil action pending in the District Court and dismissed without prejudice the claim for reimbursement of such fees.

Davenport and the additional $1,500.00 of fees sought is not reimbursable.

I incorporate the *Memorandum Decision re Debtor's Motion to Modify Plan and Secured Creditors' Application for Allowance of Postpetition Fees and Expenses* entered on November 24, 2020, in the main case (Case No. 15-00540) ("*Memorandum Decision*"), which explores in depth the background and the appropriate legal standards for awarding a mortgagee fees and expenses.[2]  I will use some of the *Memorandum Decision*'s shortened references to various filings, to the property at issue, and to the names of entities.

I

BACKGROUND

The discussion will principally concern the main bankruptcy case, which addressed fees incurred through February 13, 2018. Docket references will be to the docket in the main case unless noted otherwise.  A summary of the procedural history is warranted.

Davenport borrowed $80,000 from Djourabchi and Welt in September 2016, a loan evidenced by the *Note* and secured by a *Deed of Trust* on the Property.  The *Note* called for interest-only

---

[2]  The *Memorandum Decision* is reported as *In re Davenport*, ___ B.R. ___, 2020 WL 6891912 (Bankr. D.D.C. 2020).

3

payments until maturity (unless the debt was prepaid in full).

Djourabchi and Welt believed that Davenport defaulted under the

payment terms of the *Note* (by making late payments), and thereby

incurred various penalties and an obligation to reimburse them

for attorneys' fees they had incurred.[3]  In September 2015, they

commenced foreclosure efforts against the Property.  Davenport,

however, was actually never in default.  On October 14, 2015,

Davenport commenced the main bankruptcy case under Chapter 13 of

the Bankruptcy Code (11 U.S.C.), thereby staying the foreclosure

efforts pursuant to 11 U.S.C. § 362(a).  On January 15, 2016, the

court confirmed Davenport's Chapter 13 plan.

     After confirmation of his Chapter 13 plan, Davenport

objected to Djourabchi and Welt's proof of claim.  On July 21,

2016, the court entered in the bankruptcy case its *Proof of Claim*

---

[3]  Davenport filed a bankruptcy case in this court in 2009,
Case No. 09-00772.  In that case, Djourabchi and Welt's proof of
claim, as amended, did not specify any dollar amounts in arrears
based on the existence of the alleged default, but Davenport's
Chapter 13 plan did not provide for the trustee to cure any
arrears.  After Davenport completed his confirmed Chapter 13
plan, the court held that the failure to file a proof of claim
listing the amount in arrears did not modify the parties' rights
under the *Note* and the *Deed of Trust*.  *See In re Davenport*, 544
B.R. 245 (Bankr. D.D.C. Dec. 31, 2015).

*Decision* (Dkt. No. 109), and the *Proof of Claim Order* (Dkt. No.

110), which stated:

> that the claim of Djourabchi and Welt is allowed in the
> amount of $80,000 as of the commencement of this case,
> with a credit in favor of the debtor of $26,422.90 for
> interest accruing after the commencement of the case (or
> for payment of other components of the allowed claim),
> and the claim of Djourabchi and Welt is otherwise
> disallowed, except with respect to amounts allowable
> under 11 U.S.C. § 506(b) incurred after the commencement
> of the case.[4]

Except for a $2.97 error on the part of Davenport's expert,

Runge, in computing the interest owed for the first nine days of

the loan, the *Order* agreed with Runge's views.  I found that the

testimony of Djourabchi and Welt's expert was baseless and I gave

no weight to his testimony.

The *Proof of Claim Order* left open the question of "amounts

allowable under 11 U.S.C. § 506(b) after the commencement of the

case" and thus did not fix the amount of fees incurred or

interest accrued prior to confirmation, which are part of an

allowed secured claim under § 506(b), in contrast to fees

incurred postconfirmation and interest fixed by the confirmed

plan at 6% per annum to accrue postconfirmation on the allowed

---

[4] Because the payments made by Davenport were not to be
applied to principal, the principal as of the petition date
remained at $80,000, with a credit of $26,422.90 on hand.

secured claim.  The parties disagreed regarding the application
of plan payments to the allowed secured claim.

On December 15, 2016, Davenport filed his civil action
against Djourabchi and Welt in the District Court, asserting a
wrongful foreclosure claim and other claims.  Shortly thereafter,
on January 17, 2017, Davenport filed a *Motion to Modify Chapter
13 Plan After Confirmation* (Dkt. No. 125), contending that he had
submitted to the Chapter 13 trustee sufficient funds to satisfy
the allowed secured claim, and seeking (based on a reduced
income) to modify the plan by reducing his remaining monthly plan
payments to $1,425.00 per month, an amount sufficient to satisfy
both Djourabchi and Welt's allowed secured claim and the only
other allowed claim in the case, a claim of the IRS.

After the filing of the *Motion to Modify*, Janet M. Nesse and
Justin P. Fasano entered an appearance as the attorneys for
Djourabchi and Welt, replacing former counsel.  On February 22,
2017, Djourabchi and Welt opposed the *Motion to Modify* and
included therewith their *Application for Fees and Expenses*
seeking allowance of fees and expenses for which they had
incurred liability postpetition (Dkt. No. 137).  Djourabchi and
Welt had not paid those fees until after the plan was confirmed,
and, accordingly, Davenport's obligation to reimburse for the
payment of those fees was a postconfirmation obligation, and not

6

part of the allowed secured claim fixed as of confirmation of
Davenport's Chapter 13 plan.  But the obligation potentially
could have affected Davenport's ability to perform on the
confirmed plan, and thus was a matter over which the court had
bankruptcy subject matter jurisdiction pursuant to 28 U.S.C.
§ 1334(b).

    On June 30, 2017, Davenport filed a *Motion In Limine
Prohibiting Creditors From Claiming Entitlement to
Attorneys Fees* (Dkt. No. 154) and a *Motion in Limine Regarding
Interpretation of Court's Orders and Application of Payments Made
on Account of Creditors' Claim* (Dkt. No. 156).  As to the first
*Motion in Limine*, the *In Limine Decision* of September 11, 2017
(Dkt. No. 168), ruled that the confirmed plan did not eliminate
Djourabchi and Welt's right to seek reimbursement for reasonable
attorneys' fees they paid after confirmation of the plan.
However, as to any right for reimbursement of attorneys' fees
incurred in the civil action in the District Court, the *In Limine
Decision* set that aspect of the matter aside to be further
decided when the civil action was resolved.  As to the second
*Motion in Limine*, the *In Limine Decision* ruled that:

- The amount of the allowed secured claim (fixed as of
  the confirmation date) was $55,717.03 (consisting of

the $80,000.00 of principal, plus postpetition interest
of $2,139.93, less the credit of $26,422.90).

- Under 11 U.S.C. § 506(b), no fees were included in the
allowed secured claim because Djourabchi and Welt had
not paid them prior to confirmation of the plan.

- Under the confirmed plan, Davenport was required to pay
the allowed secured claim with postconfirmation
interest of 6% per annum, and the plan eliminated the
interest-only-payments feature of the *Note*.

I held a trial concerning the *Motion to Modify* and the
*Application for Fees and Expenses* on February 27, 2018, and March
1, 2018.  Afterwards, the parties engaged in an unsuccessful
mediation in an attempt to settle both the bankruptcy case and
the civil action.

Meanwhile, on January 26, 2018, Davenport had commenced this
adversary proceeding.  Djourabchi and Welt filed a counterclaim
seeking a determination of all of the attorneys' fees they have
incurred since the bankruptcy case was filed, and continued to
incur.  I deferred holding a scheduling conference pending the
outcome of the *Motion to Modify*.  Adv. Pro. Dkt. No. 25.

On November 24, 2020, I issued the detailed *Memorandum
Decision*, which granted the *Motion to Modify*, finding that the
payments of $1,425.00 per month after filing of the *Motion to*

8

*Modify* were sufficient to complete the plan, and which, applying

District of Columbia law, partially granted the *Application for*

*Fees and Expenses*, addressing fees and expenses paid after

confirmation of Davenport's plan and through February 13, 2018,

shortly before the trial ended March 1, 2018.  The *Memorandum*

*Decision* disposed of any remaining claims in this adversary

proceeding except those relating to fees incurred after February

13, 2018, the claims regarding such fees being:

- Davenport's request in his complaint for a declaration
  that "[f]ees and costs expended asserting or defending
  unreasonable positions are not reasonable as a matter
  of law;" and

- Djourabchi and Welt's counterclaim for a determination
  of the amount of such fees reimbursable by Davenport.[5]

---

[5]  The court had jurisdiction over the counterclaim for fees
and Davenport's request for a declaration regarding fees because
the fees could have an impact on Davenport's ability to perform
on his plan.  After entry of the *Memorandum Decision*, the Chapter
13 trustee reported that Davenport had completed his plan, and,
accordingly, the issue of any further reimbursable fees owed to
Djourabchi and Welt could not have an impact on Davenport's
performance under the plan, and it would not have an impact on
the only remaining matter in the bankruptcy case, Davenport's
right to a discharge.  Nevertheless, both parties agreed that it
made sense to retain jurisdiction over these remaining matters
and for me to decide them.

Accordingly, the remaining issue is what is the extent of the attorneys' fees incurred by Djourabchi and Welt after February 13, 2018, for which Davenport has a reimbursement obligation, both for work in the main bankruptcy case and in this adversary proceeding.

Djourabchi and Welt do not dispute that District of Columbia law applies in determining what fees are allowable (although, of course, bankruptcy law bears on what services were necessitated), and they have not challenged this court's evaluation of District of Columbia law in the *Memorandum Decision*. Davenport does not dispute the hourly rates charged or the amount of time incurred in completing each task and does not contend that the time to complete any task was an unreasonable amount of time to complete the task.

I need not repeat at length my analysis of the law regarding allowance of a mortgagee's attorney's fees under District of Columbia law. See *Memorandum Decision* at 79-87. Suffice it to highlight once again a primary holding in *Manchester Gardens, Inc. v. Great W. Life Assur. Co.*, 205 F.2d 872, 977-78 (D.C. Cir. 1953):

> [W]here the merit or necessity of the creditor's claim or
> defense is successfully challenged, courts may decline to
> enforce attorney's fee provisions. When contractual
> provisions for payment by a debtor of his creditor's
> attorney's fees and costs are invoked, such payment

10

should not be enforced in the full amount of the
creditor's legal expenses (even though actually incurred,
and reasonable in amount) where his claims or defenses
giving rise to such expenses lack substantial merit.  In
no event should the sum allowed be so large as to amount
to an undue penalty for taking one's grievance to the
courts.  And if the creditor has benefitted by having a
doubtful question of law resolved, thus reducing the area
of potential future dispute, the debtor should bear only
a fair portion of the burden.

(Footnotes omitted.)

II

MINOR ERRORS IN FEES LISTED ON EXHIBITS A AND B

Djourabchi and Welt's Exhibit A ("Time Records") and Exhibit

B ("Time Records attributable to adversary proceeding") set forth

the various fees they incurred and paid after February 13, 2018.[6]

I note some minor errors in Exhibits A and B before I address the

arguments the parties raised.

Exhibit A lists fees of $45,058.50[7] before write-offs

totaling $500.00 (regarding two entries not on Exhibit B) for a

net amount claimed of $44,558.50.  Exhibit B lists fees of

$10,757.50 for the adversary proceeding.  It was apparently

---

[6] Exhibit C (attached to the defendants' pretrial
statement) is also received into evidence if I did not make that
clear at the trial.  It duplicates Exhibit A except it adds even-
numbered pages that show the resulting amount after applying any
write-downs listed on Exhibit A.

[7] The $45,058.50 is the result of $45,128.50 in fees less a
stricken-through entry for $70.00 of fees for work on
garnishments on 11/05/2019, an entry not on Exhibit B.

intended that Exhibit A would list time entries for the main case plus the adversary proceeding, and Exhibit B would list all of the time entries related to the adversary proceeding.  The exhibits fell short of that goal in three ways:

- *Entries on Exhibit A Relating to Adversary Proceeding That are not on Exhibit B.*  Exhibit A includes some time entries relating to the adversary proceeding that were *not* included on Exhibit B.  Those entries are addressed later.

- *Inconsistent Amounts on Exhibits A and B for Time Entry of 3/28/2018.*  The entry for 3/28/2018 of $65.00 on Exhibit B conflicts with the $32.50 entry for the same work on Exhibit A ("Time Records"), and it is apparent that in preparing Exhibit B from the law firm's time records a mistake was made.  The listing on Exhibit B should be $32.50 as on the general time records.

- *Time Entries on Exhibit B not Included on Exhibit A.*  Exhibit B lists fees of $10,757.50 incurred in the adversary proceeding, but through apparent oversight, Exhibit B's first five time entries (which are for

1/26/2018[8] through 2/16/2018, dates earlier than the first date on Exhibit A, February 19, 2018) list fees totaling $1,310.00 that are not included on Exhibit A.[9] Exhibits A and B assert total fees of $46,401.00 (the $45,058.50 included on Exhibit A plus the $1,342.50 included on Exhibit B but not on Exhibit A).[10]  After applying the $500.00 write-off, the total fees sought on the two exhibits are $45,901.00.[11]

---

[8]  Exhibit B lists the 1/26/2018 date as 1/26/2020, but the description of the work performed as "Review complaint" obviously related to the adversary proceeding *Complaint* filed on January 26, 2018.

[9]  In separating out time on the main case versus the adversary proceeding, it must be noted that two entries on Exhibit A include both time on the adversary proceeding (which was included on Exhibit B) and time on the main case.  The entry for 02/26/2018 on Exhibit A for $975.00 included work on the forthcoming trial in the main case as well as work in the adversary proceeding, and Exhibit B treats $487.50 as the portion attributable to the adversary proceeding.  Similarly, the entry for 3/21/2018 on Exhibit A is for $300.00 and Exhibit B treated only $195.00 as attributable to the adversary proceeding.

[10]  The $1,342.50 is the sum of the $32.50 overstatement on Exhibit B for 03/28/2018 plus the $1,310.00 of time entries included on Exhibit B for dates earlier than the first date on Exhibit A.

[11]  Djourabchi and Welt have not disputed the general thrust of Davenport's observation in his *Objection to Defendants' Statement of Attorneys' Fees and Costs* (Dkt. No. 55) at ¶ 3 that for dates that appear on both Exhibit A and Exhibit B, identical time entries on Exhibit B are already on Exhibit A.  Both parties apparently failed to spot that Exhibit B includes $1,342.50 of fees that are *not* on Exhibit A, and that, accordingly, Exhibit A did not include the entirety of the $10,757.50 on Exhibit B.

13

III

## REIMBURSABLE FEES ON EXHIBIT B
## AFTER ADJUSTING FOR TWO MINOR MISTAKES

Exhibit B sets forth $10,757.50 in fees, but this amount requires minor reductions brining the reimbursable fees on Exhibit B to $10,627.50.  First, the $10,757.50 must be reduced by the $32.50 error noted above with respect to the entry of 3/28/2018.  Second, another $97.50 entry (for "Review complaint") on Exhibit B must be disallowed for the time entry for work of JPF on 1/26/2108.  The *Memorandum Decision* ruled on fees paid through February 13, 2018, and in the trial in 2018 regarding the *Application for Fees*, Djourabchi and Welt's Exhibit N included:

| 1/26/2018 | JPF | Review deadlines re exhibit, **review complaint** | 0.4 hrs. | $130.00 |
|---|---|---|---|---|

(Emphasis added.)  Djourabchi and Welt have not shown that the $97.50 for "Review complaint" on Exhibit B in the current trial was paid after February 13, 2018, and have not shown that the $97.50 was not already included as part of the billing on Exhibit N in the trial in 2018 for work on 1/26/2018 that included "review complaint."  Accordingly, the 1/26/2018 time entry was already addressed by the *Memorandum Decision*.  I will disallow this $97.50 as duplicating an amount addressed by the *Memorandum Decision*.

14

Davenport raised no objection to the claim that the fees on Exhibit B are reimbursable.  Aside from the two minor mistakes noted above, there is no reason why I ought not award the fees listed on Exhibit B.  Accordingly, I will fix the reimbursable fees on Exhibit B as equaling $10,627.50 ($10,757.50 minus $32.50 and $97.50).

I turn next to the entries on Exhibit A not included on Exhibit B, which total $35,143.50.[12]  I address in parts IV and V the $18,041.00 of this $35,143.50 incurred **through** March 2, 2018,[13] and in part VI the $17,102.50 of this $35,143.50 incurred **after** March 2, 2018.

---

[12]  Of the $10,757.50 of fees on Exhibit B, $1,342.50 (the $1,310.00 for the first five time entries and $32.50 for the time entry of 03/28/2018) were not included on Exhibit A.  This results in Exhibit B listing $9,415.00 of fees that were included on Exhibit A ($10,757.50 minus $1,342.50).  Accordingly, Exhibit A, listing total fees of $44,558.50 (after $500.00 of writeoffs for entries of 02/28/2020 and 02/28/2020) consists of $35,143.50 of fees not duplicated on Exhibit B.

[13]  The $18,041.00 is the $18,698.50 for the period listed on Exhibit A minus $657.50 of fees that were on Exhibit B for that period and duplicated on Exhibit A.  The fees on Exhibit B that were on Exhibit A for the period ending March 2, 2018, were: 2/22/2018 $40.00; 02/26/2018 $487.50; and 2/28/2018 $130.00. These total $657.50.

IV

EXHIBIT A: PORTION ADDRESSING
WORK AFTER FEBRUARY 13, 2018, AND
THROUGH MARCH 2, 2018, ON THE *MOTION TO MODIFY*

The $18,041.00 of fees on Exhibit A that were incurred through March 2, 2018, and not duplicated on Exhibit B relate in part to the *Motion to Modify* and in part to the *Application for Fees and Expenses*.  This part IV addresses the part of the $18,041.00 relating to the *Motion to Modify*.

In opposing the *Motion to Modify*, Djourabchi and Welt contended that the claim had not been fully paid because interest accrued after confirmation of the Chapter 13 plan had not been paid in full and because they were entitled to reasonable attorneys' fees and expenses.  However, contrary to positions taken by Djourabchi and Welt:

- as to interest accruals, it was clear that a minimal amount of interest was owed as of January 31, 2017 (the end of the month in which the *Motion to Modify* was filed) and that the proposed modified plan would suffice to pay off that interest; and

- as to fees, there were no fees and expenses owed that became part of the allowed secured claim because the

16

allowed secured claim was determined as of the date of

confirmation of Davenport's plan.

The *Memorandum Decision* ruled:

> Most of the fees incurred in opposing the *Motion to
> Modify* (to be distinguished from fees incurred in
> pursuing the *Application for Fees and Expenses*) ought not
> be awarded.  The Motion to Modify is being granted, with
> Davenport prevailing on the bulk of his approach as to
> what remained owed under the confirmed plan, and with the
> bulk of Djourabchi and Welt's positions in that regard
> lacking substantial merit and being arguments that a
> reasonable creditor would not have pursued.

*Mem. Dec.* at 113.  I determined that as of January 31, 2017, only

$97.70 of interest was owed to Djourabchi and Welt, and that the

proposed modified plan would plainly suffice to pay off

Djourabchi and Welt's claim and the claim of the IRS (the only

other claim in the case).  Djourabchi and Welt had little success

regarding the *Motion to Modify*.[14]   Based on Djourabchi and Welt's

paltry level of overall success in opposing modification of the

plan, due in large part to their taking positions that lacked

substantial merit, the *Memorandum Decision* allowed 20% of their

fees incurred through February 13, 2018, in opposing the *Motion

to Modify*.   I see no reason to modify that percentage with

respect to fees incurred and paid after February 13, 2018, with

respect to the *Motion to Modify.*   The fees incurred after

February 13, 2018, and through March 2, 2018, on Exhibit A and

not included on Exhibit B as relating to the adversary proceeding

were $18,041.00.

---

[14]   Djourabchi and Welt demonstrated a minor erroneous
assumption in the report of Davenport's expert, Runge, *see Mem.
Dec.* at 44 n.16, which in part led to my determination that
$97.70 of interest was still owed to Djourabchi and Welt as of
January 31, 2017, in comparison to Runge's calculation that
$228.00 more than was necessary had been paid to satisfy interest
accruals.   *Id.* at 44.   Runge's calculation of the amount that was
owed to Djourabchi and Welt as of January 31, 2017, was thus off
by $325.70.   The $97.70 amount did not suffice to set aside the
Chapter 13 trustee's projection, made in March 2017, that the
proposed modified plan payments would suffice to complete payment
of all allowed claims within the applicable five-year statutory
deadline.   I held that "Djourabchi and Welt's success of $325.70,
which did not suffice to warrant denying the *Motion to Modify*,
hardly warrants an award of any significant part of their fees."
*Mem. Dec.* at 114-115.   I also determined that Djourabchi and Welt
were entitled to a modest amount of fees for opposing Davenport's
suggestion that the $26,422.90 credit should be applied as of the
petition date.

As in the case of fees paid for services incurred through February 13, 2018, and addressed by the *Memorandum Decision*, it is difficult to apportion the time spent on the *Motion to Modify* versus the *Application for Fees and Expenses*.  Having reviewed the evidence and arguments presented at the trial in 2018, and based on the filings and trial preparation efforts before the trial reflected in the time records of counsel, I conclude that 25% of the time spent by Djourabchi and Welt's attorneys in the main case after February 13, 2018, and through March 2, 2018, was devoted to the *Motion to Modify*, and 75% was devoted to the *Application for Fees and Expenses*.  Of the $18,041.00, the 25% treated as work on the *Motion to Modify* is $4,510.25.  Of that $4,510.25 allocable to the *Motion to Modify*, 20% or $902.05 is allowed as reimbursable and 80% or $3,608.20 is not allowed as reimbursable.

V

EXHIBIT A: PORTION ADDRESSING WORK
AFTER FEBRUARY 13, 2018, AND THROUGH
MARCH 2, 2018, ON THE *APPLICATION FOR FEES AND EXPENSES*

As noted above, the fees incurred after February 13, 2018, and through March 2, 2018, and included on Exhibit A were $18,041.00 (after excluding fees that were on Exhibit B and duplicated on Exhibit A).  And as further noted, I am treating

75% of the $18,041.00 or $13,530.75 as attributable to work on the *Application for Fees and Expenses*.

A.

ADDRESSING UNSUCCESSFUL MATTERS RAISED BY DAVENPORT

Djourabchi and Welt are entitled to reimbursement of $4,955.00 of fees incurred after February 13, 2018, and relating to successfully defeating Davenport's assertion of various positions.  Davenport raised numerous arguments (rejected in the *Memorandum Decision*) in an attempt to show that no fees were owed whatsoever, including:

- res judicata (based on failure to claim fees when the parties litigated the objection to claim in 2016);

- lack of timely Rule 3002.1 notice;

- equitable estoppel or waiver;

- the effect on any entitlement of Djourabchi and Welt to fees of their allegedly having prompted Davenport to file the bankruptcy case by pursuing foreclosure when Davenport was not in default;[15] and

- the rejection of Davenport's tender of an amount sufficient to satisfy the debt.

_____

[15]  I made clear that Davenport was nevertheless free in the pending civil action to seek the fees allowed against him in the bankruptcy case as a form of damage allegedly recoverable from Djourabchi and Welt.

Davenport also pursued an unsuccessful *Motion to Consolidate*.
The time attorneys spent addressing the unsuccessful arguments
and the *Motion to Consolidate* ought to be compensable.  However,
the attorneys' fees incurred in addressing those matters were not
significant.  It is difficult to quantify the time spent on some
of these tasks but I can make a fair approximation of the time
required to address Davenport's unsuccessful positions.

*Res judicata and Equitable Estoppel or Waiver*.  Davenport's
arguments regarding res judicata and equitable estoppel or waiver
bordered on being frivolous.  They should have required
insignificant trial preparation time or trial time.  A fair
estimate is that $250.00 should be allocated as attorney work on
this issue.

*Rule 3002.1*.  This argument had been rejected in Davenport's
prior bankruptcy case, and in light of the character of
Davenport's confirmed plan in the current case (Case No. 15-
00540), a change in Rule 3002.1 did not alter its inapplicability
in the current case.  The time entries on Exhibit A for
Djourabchi and Welt's counsel show $1,255.00 of fees preparing a
motion in limine (Dkt. No. 199 filed on February 23, 2018) as to

this issue.[16]  At the trial on February 27, 2018, a short amount
of time was devoted to the issue of where Davenport had lived
(affecting whether Rule 3002.1, even if applicable otherwise,
would be inapplicable because he allegedly did not live in the
Property).  I deem $400.00 to be the appropriate fee for
addressing the issue at trial.  Accordingly, $1,655.00 is
recoverable for work on the Rule 3002.1 issue.

*Allegedly Wrongful Foreclosure*.  Some fees are warranted
with respect to addressing the argument that Djourabchi and Welt
are not entitled to fees because they allegedly wrongfully
prompted Davenport to file the bankruptcy case by pursuing
foreclosure when Davenport was not in default.  It was necessary
to address this issue at the trial, as well as to prepare to
address the issue.  I will treat $800 as devoted to this issue.

*Rejection of Tender*.  Davenport argued that there was an
improper rejection of Davenport's tender of an amount sufficient
to satisfy the debt.  The parties did not file briefs on this
issue.  What became obvious was that the *Note* had very specific
terms regarding giving notice of an intent to pay off the *Note*,
and Davenport had not complied with those terms.  Although the

---

[16]  The entries are: 02/22/2018 JPF: $780 (2.40 of 3.80
hours); 02/22/2018 JMN (second entry): $150.00; 02/23/2018 JPF:
$325.00 (1.0 of 1.70 hours).

*Memorandum Decision* addressed at length other legal issues as to

why the rejection of the tender was not improper, the parties did

not discuss at length the legal issues concerning tender other

than the interpretation of the *Note* and specifically the *Note*'s

requirement of notice.  Some meaningful time was spent at trial

(and in preparing for trial) to address whether Davenport had

given proper notice, and I estimate that $1,500 was addressed to

this issue.

   *Motion to Consolidate*.  In addition, Davenport

unsuccessfully filed a *Motion to Consolidate*, seeking to

consolidate the trial with a trial of the adversary proceeding

lest res judicata be later asserted with respect to claims he was

making in the adversary proceeding.  He also filed a *Motion to

Shorten Time* seeking to shorten the time for any opposition.  I

denied those requests.  The time entries list time spent

preparing an opposition to the *Motion to Consolidate* by JPF and

apparently JMN on 02/26/2018, but the time entries involve

"lumping" (being included with other tasks) and do not break out

the exact time.  Based on the high quality of the opposition,

which obviously required some time to prepare, I estimate that

the attorney time came to $450 in fees in preparing the

opposition, and I will add to that an estimate of $100 for trial

preparation time on this issue and an estimate of $200 for

dealing with this issue at the trial.  Accordingly, $750 is the estimated amount of total fees as to this issue.

The foregoing items equal $4,955.00 of fees for which Djourabchi and Welt are entitled to reimbursement as to specific issues raised by Davenport and upon which they succeeded.

B.

WORK ON OTHER TASKS THROUGH MARCH 2, 2018,
RELATING TO THE *APPLICATION FOR FEES AND EXPENSES*

As noted above, $13,530.75 is the estimate of fees applicable to litigation after February 13, 2018, and through March 2, 2018, on the *Application for Fees and Expenses*.  After excluding the $4,955.00 of fees for addressing issues raised by Davenport (and identified above) upon which Djourabchi and Welt prevailed, there remain fees of $8,575.75 incurred after February 13, 2018, and through March 2, 2018, that involved litigating the *Application for Fees and Expenses*.  For the following reasons, I will treat half of that (or $4,287.88) as reimbursable and the other half ($4,287.87) as not reimbursable.

The *Memorandum Decision* discussed at length why the fees sought in the case regarding work on the *Application for Fees and Expenses* through February 13, 2018, were in large part for work that ought not be compensable.  Taking into account the time spent on the Davenport's attempt to bar fees *in toto*, I concluded

24

that only 50% of the fees incurred in seeking fees ought to be awarded. *Mem. Dec.* at 118. Having been successful as to only 50% of the fees incurred through February 13, 2018, Djourabchi and Welt ought to be compensated for only 50% of the remaining $8,575.75 of fees incurred after February 13, 2018, in seeking reimbursement for that 50% of fees allowed by the *Memorandum Decision*.

This follows because under *Manchester Gardens* a mortgagor ought not be required to pay for fees the mortgagee incurred in pursuing unsuccessful positions. On Exhibit A, Djourabchi and Welt did not attempt to reduce the fees they sought based on lack of success on many of the issues litigated.[17] In several instances, the circumstances in which fees had been incurred ought to have alerted counsel that pursuing recovery of those fees would not be successful. Two examples illustrate this.

First, one significant item was work by prior counsel on the objection to Djourabchi and Welt's proof of claim. The *Proof of Claim Decision* (Dkt. No. 109 dated July 21, 2016) found that Davenport had never been in arrears, and in fact, had made payments ahead of time and stayed on top of his payments, and

---

[17]   Exhibit A includes $500.00 of write-offs but they do not appear to be based on lack of success on various positions advanced, and do not relate to work after February 13, 2018, and through March 2, 2018, the period addressed in this part.

25

found that the amount owed as of the petition date was $80,000,
with a credit of $26,422.90 not yet applied.  Accordingly, the
claim was allowed in the amount of $55,717.03 instead of the
$92,682.97 asserted by Djourabchi and Welt's proof of claim.  It
would be obvious under *Manchester Gardens* that Djourabchi and
Welt were not entitled to recover fees for their unsuccessful
efforts in that regard, yet in the trial ending on March 1, 2018,
they sought the full amount of fees incurred in litigating the
objection to their proof of claim.

Second, in the 2018 trial, Djourabchi and Welt called expert
witnesses who added little to the case.  Lipnitsky was their
accounting expert, and his work was initially based on erroneous
assumptions supplied by Djourabchi and Welt's attorneys, and once
he made revisions on the night before the trial, his calculations
did not significantly impact the determination of the amount of
interest that had accrued.  They also called Katz as an expert
witness regarding attorneys' fees, and for two reasons his
testimony similarly added little to the case.  First, Davenport
had made clear at the pretrial conference concerning the 2018
trial that he would not question the appropriateness of
Djourabchi and Welt's attorneys' hourly rates or question the
amount of time it took to complete each of the various tasks, but
would question whether awarding the fees would be reasonable.

Second, Katz failed to address the standard applicable under District of Columbia law (governing the fees at issue because they were all paid after confirmation) with respect to a mortgagor's obligation to reimburse a mortgagee for attorneys' fees incurred.[18]

To recapitulate, I will award $4,955.00 as reimbursable for successfully defending against positions taken by Davenport (including his attempt to have me deny fees *in toto* and his *Motion to Consolidate*), and in the exercise of my discretion, applying District of Columbia law as discussed in the *Memorandum Decision*, I will award as reimbursable 50% of the remaining $8,575.75 of fees incurred in pursuing the *Application for Fees and Expenses*, which comes to $4,287.88.  The total of reimbursable fees on Exhibit A for work from February 13, 2018, through March 2, 2018, pursuing the *Application for Fees and Expenses* is thus $9,242.88 (the sum of $4,955.00 and $4,287.88).

---

[18]   Section 506(b) sets forth a Federal standard of reasonableness applicable to fees for which a reimbursement obligation arose pre-confirmation, and none of the fees here entailed a pre-confirmation reimbursement obligation.  Even under § 506(b), the amount of fees sought would have been unreasonable. Katz testified at one point that the work ought to be compensable if it passed muster under Fed. R. Bankr. P. 9011 (the analog of Fed. R. Civ. P. 11), but as the *Memorandum Decision* explained, that is not the standard under either § 506(b) or under District of Columbia law (*Manchester Gardens* and other decisions discussed in the *Memorandum Decision*).

The *Memorandum Decision* reduced fees incurred prior to February 13, 2018, for pursuing the *Application for Fees* by 50%. Here, in contrast, I am:

- first awarding Djourabchi and Welt $4,955.00 of fees for successfully defending against positions taken by Davenport; and

- only then applying the 50% disallowance to the fees for pursuing fees remaining after excluding that $4,955.00 award.

This different approach is warranted for the following reasons. The fees this time were incurred for work that did not clearly entail overzealousness in advancing positions without substantial merit. Moreover, most of the work on successfully defeating Davenport's attempt to bar fees *in toto* and his *Motion to Consolidate* was performed after February 13, 2018, and in contrast to earlier work on the matters, the record permits me more readily to quantify the reimbursable fees for work on these matters during the period of February 13, 2018, through March 2, 2018.

Accordingly, for the period of February 13, 2018, through March 2, 2018, $9,242.88 (the sum of $4,287.88 and $4,955.00) is Davenport's reimbursement obligation with respect to litigating

the *Application for Fees and Expenses* and reimbursement is denied as to $4,287.87 of such fees.

VI

WORK AFTER MARCH 2, 2018, ON
EXHIBIT A AND NOT DUPLICATED ON EXHIBIT B

Fees for time entries on Exhibit A for work *after* March 2, 2018, that are not on Exhibit B total $17,102.50.[19]  For reasons explained below, $8,320.65 of this $17,102.50 will be allowed as reimbursable.  The remaining $8,781.85 will be disallowed as a reimbursement obligation, without prejudice to pursuit, after completion of the civil action in the District Court, of $1,080.00 for work regarding the civil action.

1.  *The Motion to Supplement*.  Several entries, totaling $4,220.00 in fees,[20] relate to an unsuccessful *Motion to Supplement Record in Opposition to Motion to Modify Plan and for Allowance of Fees* filed in the main case (Dkt. No. 227) on June

---

[19]  Total fees on Exhibit A that were not included on Exhibit B were $35,143.50.  The fees on Exhibit A for work performed by March 2, 2018, totaled $18,041.00 (after excluding fees of $657.50 that were also on Exhibit B for the adversary proceeding).  Fees for time entries on Exhibit A for work *after* March 2, 2018, that are not on Exhibit B are thus $17,102.50 ($35,143.50 minus $18,041.00).

[20]  The time entries are: 03/11/2019 $607.50; 03/12/2019 $135; March 13, 2019 $382.50; 05/09/2019 $70.00; 05/16/2019 $1,085.00; 05/21/2019 $770.00; 05/22/2019 $200.00; 05/23/2019 $140.00; 05/24/2019 $315.00; 05/27/2019 $140.00; 06/13/2019 $70.00; 06/13/2019 $200.00; 06/26/2019 $105.00.

11, 2019, concerning the recovery of $21,322.14 for Djourabchi
and Welt's attorneys' fees and expenses allocable to obtaining
the dismissal of four counts in the District Court civil action.
I will deny the claim for reimbursement of the fees incurred in
pursuing the *Motion to Supplement*.

In a decision of June 25, 2019, entered on June 26, 2019
(Dkt. No. 231), I denied the *Motion to Supplement*, stating:

> While some counts have been dismissed, those counts have
> not been dismissed with prejudice, and, as noted above,
> prevailing on those counts does not, in and of itself,
> grant Djourabchi and Welt a right to attorney's fees.
> Accordingly, it is premature at this time to decide the
> issue of attorney's fees, insofar as it relates to the
> District Court case.

*Id.* at 3.  The *Motion to Supplement* was filed:

- after I had issued the *In Limine Decision* in September
  2017 stating "[a]s the District Court case is still
  pending, I will set that aspect of this matter aside to
  be further decided *when that case is resolved*"
  (emphasis added), Dkt. No. 168 at 12; and

- after I had issued a decision in this adversary
  proceeding on September 28, 2018 (disposing of a motion
  to reconsider) in which I stated, with respect to fees
  in the civil action in the District Court, that "there
  is not a final and appealable judgment, meaning, the
  issue of whether Djourabchi and Welt could seek

30

> attorney's fees as prevailing parties is not ripe
>
> because the case [*i.e.*, the civil action] is still
>
> pending."  Adv. Pro. Dkt. No 36 at 6.

The *Motion to Supplement* was denied and ought not have been
pursued in light of these clear signals that I would not address
fees incurred in the civil action in the District Court until the
civil action was concluded.  In my discretion under *Manchester
Gardens*, I will disallow as fees for which Davenport has a
reimbursement obligation the $4,220.00 in fees incurred in
unsuccessful pursuit of the premature *Motion to Supplement.*

2.  *Fees for Rendering Assistance to Djourabchi and Welt's
Counsel in the District Court Civil Action*.  For work in November
2019, there are $1,080.00 of fees, such as one for 11/21/2019
("Assist A. McCusker regarding expert report"), relating to
assisting A. McCusker and R. Goldberg, Djourabchi and Welt's
counsel in the District Court civil action, regarding expert
reports.[21]  I am allowing various minor entries for keeping
counsel in the civil action apprised from time to time regarding
the status of matters in this court.  These $1,080.00 of entries,
for three hours of work, however, go beyond that.  Fasano and

---

[21]  The entries are: 11/18/2019 $245.00; 11/18/2019 $100.00;
11/21/2019 $140.00; 11/21/2019 $70.00; 11/26/2019 $315.00; and
11/27/2019 $210.00.

Nesse did not enter appearances in the civil action and performed no direct work in the civil action.  Nevertheless, this $1,080.00 of work was not directed to addressing issues in this court but instead to assisting with respect to the claims in the District Court civil action.  I will disallow reimbursement of the $1,080.00 of fees without prejudice to pursuit of such fees in a court of competent jurisdiction once the District Court civil action is concluded.

3.  *The Public Space Fees Item*.  There is a December 22, 2020, entry for $300.00 relating to "Research and calls on public space fees."  That entry does not appear to be related to the litigation in the Bankruptcy Court.  The bankruptcy case itself was practically concluded, with the *Motion for Modification of Plan* decided on November 24, 2020, and Davenport had already completed plan payments and was entitled to obtain a discharge, so this time entry could not have dealt with any live issues in the bankruptcy case.  Nor does anything in the record show that this was related to the adversary proceeding, or to anything else that would make the fees reimbursable.  I will thus not treat this $300 as an expense for which Davenport has a reimbursement obligation.

4.  *Fees for Mediation*.  Several entries relate to the mediation attempts for the main case and the adversary

proceeding, as well as the District Court civil action, and total
$3,925.00.[22] Leading to mediation, Djourabchi and Welt had taken
positions that proved to be unsuccessful, but so had Davenport.
However, after mediation was concluded, the *Memorandum Decision*
ruled in favor of Davenport on the *Motion to Modify* and
disallowed a majority of the attorneys' fees sought by the
*Application for Fees and Expenses*. Under *Manchester Gardens*
Davenport ought not be responsible to reimburse 100% of the
$3,925.00 in fees. Thus, I will treat only 50% of the fees
Djourabchi and Welt incurred for work on mediation as
reimbursable. Accordingly, of the $3,925.00 of fees for work on
mediation, $1,962.50 will be treated as reimbursable and
$1,962.50 will be treated as not reimbursable.

    5. *Other Time Entries After March 2, 2018*. The remaining
$7,577.50 of the fees incurred after March 2, 2018, and listed on
Exhibit A but not on Exhibit B[23] are ones for which Davenport has

---

    [22] The time entries are: 3/4/2019 $50; 3/6/2019 $150;
3/13/2019 $420; 3/14/2019 $315; 3/15/2019 $175; 4/29/2019 $140;
4/29/2019 $50; 4/30/2019 $2,275; 5/7/2019 $200; and 5/8/2019
$150.

    [23] As noted above, fees for time entries on Exhibit A (and
not duplicated on Exhibit B) for work *after* March 2, 2018, total
$17,102.50. Items 1 through 4 above address fees of $9,525.00.
Accordingly, $7,577.50 of the $17,102.50 is the amount that
remains to be addressed.

a reimbursement obligation of $6,358.15, with $1,219.35 not reimbursable.  The fees include the following.

(a) *Bayview Entries*.  Two entries of 03/07/2018 and 03/08/2018, totaling $162.50 were work concerning the Bayview claim.  Bayview held the first mortgage on the Property, and the fees are reimbursable under the *Deed of Trust* as relating to protecting Djourabchi and Welt's junior lien position.

(b) *Further Rule 3002.1 Work*.  Time was spent on 10/31/2018 and 12/06/2018 responding to an objection to fees set forth in Rule 3002.1 notices (which were notices filed by Djourabchi and Welt in the event that Rule 3002.1 was deemed applicable).  The $195.00 of fees for that time ought to be reimbursable.

(c) *SBA Loan*.  There was time spent from July 1, 2020, through August 4, 2020, generating fees of $440.00, responding to the debtor's motion relating to obtaining an SBA loan.  A mortgagee (having a provision like those in the *Deed of Trust* here) ought to be entitled to reimbursement with respect to fees for such work relating to a transaction that could have an impact on the mortgagee in the bankruptcy case.

(d) *Work Relating to Adversary Proceeding*.  Many entries are *not* included on Exhibit B but nevertheless relate to matters in the adversary proceeding, in which most of the ongoing activity

34

after March 2, 2018, occurred.  These total $1,600.00.[24]
Davenport did not contest reimbursement of fees for work in the
adversary proceeding, and these fees are reimbursable.[25]

(e) *Reacting to Davenport's Status Report*.  On June 12,
2018, Davenport filed in the main case a status report regarding
a decision in the civil action in the District Court.  The
$592.50 of fees for reviewing and responding to the status report
ought to be allowed.[26]

(f) *Miscellaneous Items Prior to Entry of Memorandum
Decision*.  For dates prior to entry of the *Memorandum Decision* on
November 24, 2020, there are other fees on Exhibit A totaling
$892.50 that for the most part reflect routine entries such as
keeping the clients apprised of the status of the case; telephone

---

[24]  The time entries are: 03/09/2018 $162.50; 03/09/2018
$200.00; 03/09/2018 $450.00; 05/03/2018 $100.00; 05/11/2018
$100.00; 06/08/2018 $32.50; 06/11/2018 $100.00; 06/27/2018
$65.00; 06/28/2018 $32.50; 07/09/2018 $50.00; 01/05/2021 $150.00;
and 01/07/2021 $157.50.

[25]  For example, see the entries for March 9, 2018, May 3,
2018, and May 11, 2018 (fees for the largely successful pursuit
of a motion to dismiss in the adversary proceeding and for review
of the decision on the motion); and for June 8, 2018, through
July 9, 2018 (which include responding to Davenport's motion to
reconsider, a matter upon which Djourabchi and Welt's response
was reasonable in order to assure that there was clarity as to
the matters as to which reconsideration was being granted).

[26]  The time entries are: 06/12/2018 $65.00; 06/12/2018
$100.00; 06/13/2018 $50.00; 06/14/2018 $50.00; 06/15/2018 $32.50;
06/15/2018 $100.00; and 06/18/2018 $195.00.

calls with the two experts after the trial in the main case (when the experts might be needed in the adversary proceeding); and keeping Djourabchi and Welt's attorneys in the District Court civil action apprised of developments in the bankruptcy case and adversary proceeding.[27]  No specific objection has been raised to these fees, and I will treat them as reimbursable.

(g) *Remaining Work Performed After Entry of Memorandum Decision*.  Still at issue remain $3,695.00 of fees for the rest of the entries after entry of the *Memorandum Decision* on November 24, 2020.[28]  Djourabchi and Welt bear the burden of proof regarding the extent to which these fees are reimbursable.  These entries relate to reacting to the *Memorandum Decision* and to an order of the same date in this adversary proceeding directing the parties to state their views regarding how the court should proceed in the adversary proceeding in light of the *Memorandum Decision*.  These fees include discussing settlement with opposing counsel, evaluating the effect of the lengthy *Memorandum Decision* on what issues remained in play (including discussions with

---

[27]   The entries are 03/21/2018 $105.00; 03/23/2018 $500.00; 04/25/2018 $32.50; 02/20/2019 $50.00; 02/21/2019 $105.00; and 03/14/12019 $100.00.

[28]   The total fees for work after the *Memorandum Decision* issued total $4,302.50, but I have already disallowed $300.00 for work on "public space fees" and treated $307.50 of fees for 01/05/2021 and 01/07/2021 as reimbursable as relating to the adversary proceeding, leaving a total of $3,695.00 at issue.

Djourabchi and Welt's counsel in the District Court who were
simultaneously reviewing the *Memorandum Decision* and who prepared
a chart in that regard), and filing a response to the order in
the adversary proceeding.  On the one hand, the complexity of
this matter is due in substantial part to positions that
Djourabchi and Welt took that lacked substantial merit or did not
succeed for other reasons.  On the other hand, but adding
relatively less to the complexity of the matter, Davenport took
positions without substantial merit in trying to defeat any
reimbursement obligation.  Finally, much of the work after entry
of the *Memorandum Decision*, would have been necessary regardless
of Djourabchi and Welt having taken some positions lacking
substantial merit.

Under *Manchester Gardens*, fees necessitated by reason of a
mortgagee having taken positions lacking substantial merit ought
not be reimbursable by the mortgagor, and the court has
discretion to deny fees incurred in the pursuit of positions upon
which the mortgagee did not prevail.  The *Memorandum Decision*
devoted a substantial discussion regarding the extent of
Djourabchi and Welt's taking positions on the *Motion to
Modify* and the *Application for Fees and Expenses* that lacked
substantial merit.  Fees for work stemming from that part of the
*Memorandum Decision* ought not be fees reimbursable by Davenport.

37

The *Memorandum Decision* also clarified any doubtful factual and legal issues, and under *Manchester Gardens,* Davenport should bear only a fair portion of the fees Djourabchi and Welt incurred in reaching that clarification and seeking fees in relation thereto. Finally, the fees that Davenport will be required to reimburse for Djourabchi and Welt's pursuing fees ought not be so large as to amount to an undue penalty for Davenport's taking his grievances to this court, grievances upon which he prevailed in large part.  In light of the foregoing, some reduction of the $3,695.00 as reimbursable is warranted.  I will treat 67% (roughly two-thirds) of the $3,695.00 of fees as reimbursable, which results in $2,475.65 as reimbursable and $1,219.35 as not reimbursable.

6.  *Total of Reimbursement Obligation for Fees Listed on Exhibit A as Incurred After March 2, 2018 (Excluding Fees Duplicated on Exhibit B).*  In conclusion, as to the $17,102.50 of fees listed on Exhibit A and not on Exhibit B for work performed after March 2, 2018, I will grant reimbursement of $8,320.65 and deny reimbursement of $8,781.85, but without prejudice to pursuit of reimbursement of $1,080.00 of the fees for which reimbursement is denied once the District Court civil action concludes.[29]

---

[29]  Again, the $1,080.00 consists of these entries: 11/18/2019 $245.00; 11/18/2019 $100.00; 11/21/2019 $140.00;

VII

FEES FOR WORK AFTER JANUARY 7, 2021
(FEES NOT ON EXHIBIT A OR EXHIBIT B)

The final time entry on Exhibits A and B was for January 7,
2021, but there were additional fees incurred after that date in
preparing for and presenting Djourabchi and Welt's case at the
trial of April 9, 2021, held to fix the amount of reimbursable
fees incurred after February 13, 2018, fees that were not
addressed by the *Memorandum Decision*.[30]   After January 7, 2021,
there was a short hearing on February 12, 2021, at which I set a
trial date of March 16, 2021, for trying the remaining issue of
reimbursement of fees incurred after February 13, 2018.   But when
Djourabchi and Welt failed timely to file their exhibits, I
converted the trial date to a pretrial conference.   I thus held a
short pretrial conference on March 16, 2021.   I held the trial on
April 9, 2021.   At the trial, Nesse estimated that her firm had
run up an additional $3,500 to $4,000 in fees after the final
time entry on Exhibits A and B, including preparing for and

---

11/21/2019 $70.00; 11/26/2019 $315.00; and 11/27/2019 $210.00.

[30]   In preparing to pursue such fees, there was some work
*before* January 7, 2021: a total of $455.00 in fees was already
incurred drafting a summary of fees attributable to the adversary
proceeding (see Ex. A, JPF entries for 12/22/2020 and
12/23/2020), presumably a summary that became Exhibit B.   But the
bulk of the work preparing for the trial was *after* January 7,
2021.

appearing at the trial of April 9, 2021. In oral argument, Fasano requested that Djourabchi and Welt be awarded $4,000.00 as reimbursable fees for the work after January 7, 2021, and through the trial on April 9, 2021. Davenport did not object to my proceeding to address that request without requiring actual time records, and without requiring notice under the *Deed of Trust* of the payment of the fees. It makes sense to bring this matter to a conclusion by ruling on that request without requiring those formalities to be observed.

The burden of proof is on Djourabchi and Welt. A substantial portion of the requested reimbursement of fees is being denied. Djourabchi and Welt made no attempt to lower their request for full reimbursement of the $45,901.00 even though it was apparent under *Manchester Gardens* that not all of the fees ought to be reimbursable. Moreover, Davenport's counsel made clear at the scheduling conference and the pretrial conference that Davenport was not challenging the fees on Exhibit B, which listed work relating solely to the adversary proceeding and listed $10,627.50 of the reimbursable fees. Accordingly, it was the assertion of the $35,143.50 of fees appearing only on Exhibit A that was really at issue. Of that $35,143.50, the sum of $18,465.58 or roughly 52.5% is being allowed as reimbursable and of the $18,465.58 a total of $1,600.00 was for work on the

40

adversary proceeding, work for which Davenport raised no objection regarding reimbursement.  Some of the work resulted because I set the pretrial conference when Djourabchi and Welt failed timely to file their exhibits.  Djourabchi and Welt were partially successful, and some attorney work was incurred pursuing recovery of the fees as to which they succeeded.  However, given the degree of Djourabchi and Welt's lack of success, their failure to reduce the requested fees, and the background in which the fees arose, it is not fair to saddle Davenport with all of the fees.  I will impose a reimbursement obligation in favor of Djourabchi and Welt of $2,500.00 for fees after January 7, 2021, and through April 9, 2021 (fees that are not on Exhibit A or Exhibit B) and I will not impose a reimbursement obligation as to the remaining $1,500.00 of the $4,000.00 sought.

VIII

SUMMARY

To recapitulate, the fees that are reimbursable are $31,593.08 and those that are non-reimbursable are $18,307.92:

**EXHIBIT B (FEES LIMITED TO ADVERSARY PROCEEDING)**

|  | Allow | Disallow | Total Sought |
|---|---|---|---|
| Reimbursements Sought on Ex. B of $10,757.50: | $10,627.50 | $130.00 | $10,757.50 |

**EXHIBIT A FEES NOT ON EXHIBIT B**

|  | Allow | Disallow | Total Sought |
|---|---|---|---|
| Amts. sought on: | | | |
| **Ex. A through 3/2/2018** (total of $18,041.00): | | | |
| 25% ($4,510.25) for litigating *Motion to Modify:* | $902.05 | $3,608.20 | $4,510.25 |
| 75% ($13,530.75) for litigating *Application For Fees*: | | | |
| Defeating Davenport Positions: | $4,955.00 | -0- | $4,955.00 |
| Other: | $4,287.88 | $4,287.87 | $8,575.75 |
| **Ex. A after March 2, 2018** (total of $17,102.50): | $8,320.65 | $8,781.85 | $17,102.50 |
| **Totals:** | **$18,465.58** | **$16,677.92** | **$35,143.50** |

**FEES AFTER JANUARY 7, 2021**

Finally, there is a $2,500.00 reimbursement obligation with respect to the $4,000.00 sought for reimbursement of fees incurred after January 7, 2021, through April 9, 2021.

## TOTAL OF FEES ALLOWED AND DISALLOWED

Accordingly, the fees allowed or disallowed as reimbursable (when duplicate fees are excluded from Exhibit A) are:

|  | Allow | Disallow | Total Sought |
|---|---|---|---|
| Exhibit B: | $10,627.50 | $130.00 | $10,757.50 |
| Exhibit A: | $18,465.58 | $16,677.92 | $35,143.50 |
| **Subtotals:** | **$29,093.08** | **$16,807.92** | **$45,901.00** |
| | | | |
| Fees After 01/07/2021: | $2,500.00 | $1,500.00 | $4,000.00 |
| **Totals:** | **$31,593.08** | **$18,307.92** | **$49,901.00** |

The disallowance of $18,307.92 is without prejudice to pursuit, after the District Court civil action is concluded, of the $1,080.00 of the fees attributable to the time entries on Exhibit A for 11/18/2019; 11/21/2019; 11/26/2019; and 11/27/2019.

A judgment follows, concluding this adversary proceeding.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.